FILED'09 JAN 05 13:41 USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES HORROD,                                           Civil No. 06-6260-CL

       Plaintiff,                                  REPORT AND RECOMMENDATION

       v.

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration,

       Defendant.


CLARKE, Magistrate Judge.

       Plaintiff James Horrod brings this action pursuant to section 205(g) of the Social

Security Act, as amended (Act), 42 U.S.C. §§ 405(g) to obtain judicial review of the

Commissioner's final decision denying plaintiff's claim for continuing disability insurance

benefits.  For the reasons explained, the decision of the Commissioner should be

affirmed.

## **BACKGROUND**

       Plaintiff applied for benefits alleging disability commencing September 1, 2000.

His application was denied, but on reconsideration, plaintiff was determined to be

disabled as of January 12, 2001.  Following the receipt of an anonymous report that

plaintiff may be working and earning more than reported, the Cooperative Disability

Investigations Unit (CDIU) initiated an investigation.   As a result of the investigation,

plaintiff was notified in January 2004 that, because of his self-employment at his auto

repair business, it appeared that plaintiff had been doing substantial gainful work in

February 2001 and, therefore, it might be determined that the decision to allow plaintiff

disability benefits was not correct.  On November 20, 2004, a Notice of Reconsideration

Decision affirmed that plaintiff had never stopped performing substantial gainful activity

and he should not have been awarded disability benefits.  Plaintiff requested a hearing,

which was held before an Administrative Law Judge (ALJ) on September 8, 2005.

Plaintiff, who represented himself, appeared and testified, as did a lay witness.  On

February 13, 2006, the ALJ rendered an adverse decision, reopening and revising the

favorable disability determination, and finding that plaintiff  was not entitled to disability

insurance benefits.  The Appeals Council denied plaintiff's request for review, making

the ALJ's decision the final decision of the Commissioner.  Sims v. Apfel, 530 U.S. 103,

106-07 (2000) (and authorities cited).

The relevant evidence is discussed below.

## STANDARDS

This Court must affirm the Commissioner's decision if it is based on the proper

legal standards and the findings are supported by substantial evidence in the record.

Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more

than a mere scintilla.  It means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401

(1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The

Court considers the record as a whole, and  weighs "both the evidence that supports

and detracts from the [Commissioner's] conclusion." Martinez v. Heckler, 807 F.2d 771,

772 (9th Cir. 1986).  Where the evidence is susceptible of more than one rational

interpretation, the Commissioner's conclusion must be upheld.  Sample v. Schweiker,

694 F.2d 639, 642 (9th Cir. 1982).  Questions of credibility and resolution of conflicts in

the testimony are functions solely of the Commissioner, Waters v. Gardner, 452 F.2d

855, 858 n.7 (9th Cir. 1971), but any negative credibility findings must be supported by

findings on the record and supported by substantial evidence, Ceguerra v. Sec'y of

Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991).  The findings of the

Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.

42 U.S.C. § 405(g).  However, even where findings are supported by substantial

evidence, "the decision should be set aside if the proper legal standards were not

applied in weighing the evidence and making the decision." Flake v. Gardner, 399 F.2d

532, 540 (9th Cir. 1968); see also Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

Under sentence four of 42 U.S.C. § 405(g), the Court has the power to enter, upon the

pleadings and transcript record, a judgment affirming, modifying, or reversing the

decision of the Commissioner, with or without remanding the cause for a rehearing.

//

//

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability.  Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

A five-step sequential process exists for determining whether a person is disabled.  Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

In step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity."  Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).  In the present case, the ALJ found that plaintiff had engaged in substantial gainful activity since at least February 2001, and that he had not been unable to engage in substantial gainful activity for any continuous period of at least twelve months.  (Tr. 69-70.)  Accordingly, the ALJ found that plaintiff had not been under a disability at any time through his decision and that plaintiff should not have been awarded disability insurance benefits.  (Tr. 70.)

Because the ALJ found that plaintiff was not disabled at step one, he was not required to proceed any further in the sequential evaluation.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999); see 20 C.F.R. § 404.1520(a)(i) & (b).

## DISCUSSION

Plaintiff asserts that the ALJ's decision should be reversed because it is not supported by substantial evidence or correct legal standards. He contends that the investigator, Mr. Baumgarte, believed the false statements of plaintiff's ex-wife and was biased in his report, and the ALJ relied solely on Mr. Baumgarte's biased report and did no further investigation; and the ALJ erred in not considering his witness statements and did not contact any of the witnesses who provided statements. He also appears to contend that the ALJ was biased.

The ALJ found in his decision that plaintiff had not met his burden of showing his inability to perform substantial gainful activity. The ALJ found that plaintiff did not stop performing self-employment substantial gainful activity after his application for benefits and, therefore, plaintiff is not disabled within the meaning of the Act and he should not have been awarded benefits. (Tr. 63, 65, 70-71.)

The ALJ noted the basis of a finding of disability as of January 2001. Plaintiff submitted a work activity report for self-employed person dated November 25, 2001, in which he reported that he was the sole owner of an auto restoration and service business for British automobiles. Plaintiff described his work before his illness/injury as: "ran my restoration/repair shop performed all management decisions, paid bills, made decisions on work to be performed on cars, sourced parts for cars." (Tr. 278.) He reported that, as a result of his illness/injury, he worked reduced hours, had lower volume of cars, it became difficult for him to go to work or make any decisions, and he

had extra help.  (Tr. 278-81.)  Plaintiff stated on his application for benefits that he

made less than $700/month and, in a recommendation for disability with an onset of

January 2001, DDS determined that plaintiff's net profit from his business was "well

under $740.00."  (Tr. 106, 109.)


Substantial gainful activity (SGA) "involves the amount of compensation and the

substantiality and gainfulness of the activity itself."  Keyes v. Sullivan, 894 F.2d 1053,

1056 (9th Cir. 1990).  "Substantial work activity" is defined in the regulations as:  "work

activity that involves doing significant physical or mental activities," and "Gainful work

activity" is defined as:  "work activity that you do for pay or profit . . . whether or not a

profit is realized."  20 C.F.R. § 404.1572(a)(b).  Work activity can be considered

substantial even if done part-time.  20 C.F.R. § 404.1572(a); Keyes, 894 F.2d at 1056.

For self-employed individuals, "We will consider your activities and their value to your

business to decide whether you have engaged in substantial gainful activity."  20 C.F.R.

§ 404.1575(a)(2).  Income alone is not considered.  SGA is determined by application of

tests set out in the regulation.  20 C.F.R. § 404.1575(a)(2).

In determining whether plaintiff was performing SGA, the ALJ followed the

regulations.  The ALJ determined that plaintiff did not meet Test one, the significant

services/substantial income test, 20 C.F.R. § 404.1575(a)(2)(i), (b), (c), since his net

profits for 2001 and 2002 were $468 and $5,905, respectively.  Therefore, the ALJ

considered Test Two, the comparability of work test, and Test Three, the worth of work

test, 20 C.F.R. § 404.1575(a)(2), ultimately finding that plaintiff was engaged in SGA

under Test Three:

> You have engaged in substantial gainful activity if your work activity,
> although not comparable to that of unimpaired individuals, is clearly worth
> the amount shown in § 404.1574(b)(2) when considered in terms of its
> value to the business, or when compared to the salary that an owner
> would pay to an employee to do the work you are doing.

20 C.F.R. § 404.1575(a)(2)(iii).  The earnings guidelines in 20 C.F.R. § 404.1574(b)(2)

provide that these amounts are $740 in 2001, $780 in 2002, $800 in 2003, $810 in

2004, and $830 in 2005.  Social Security Online (www.socialsecurity.gov), POMS

Section DI 10501.015,

https://secure.ssa.gov/apps10/poms.nsf/lnx/0410501015opendocument (last visited

Dec. 16, 2008).  If a beneficiary is engaged in SGA, he or she is no longer entitled to

benefits.  Katz v. Sec'y of Health & Human Servs., 972 F.2d 290, 293 (9th Cir. 1992).

 In reaching his determination, the ALJ relied on treating medical records after

the January 2001 onset date and prior to the CDIU investigation; the CDIU Report of

Investigation dated December 3, 2003, following surveillance and interview of plaintiff

at his business; and plaintiff's and his wife's testimony at the hearing.

 The record shows that in July 2001, at an office visit with his psychiatrist, Patricia

Blose, M.D., plaintiff told her that he did not get to his depressive group because he

"had a lot of work at the shop to do last time." (Tr. 506.)  In June 2002, Dr. Blose

states in her progress notes that plaintiff reported to her that "this is his season for

working and he has been working really hard now for about three or four weeks." (Tr. 503.) Plaintiff told Dr. Blose in July 2002 that he was focusing on his work and that "This is the busy time of the year, and he has been very, very busy." (Tr. 501.)  The record supports the ALJ's finding of continuing work activity by plaintiff after the January 2001 onset date.

In a work activity report completed by plaintiff in August 2003, he states that he works reduced weekly hours, between 15-20, and that he cannot put in long hours of work. He states that his weekly hours vary, from a low of 7.5 hours to a high of 13.5. (Tr. 282-84.)

In an October 8, 2003, disability evaluation, plaintiff told Robert J. Tilley, M.D., that he worked a variable amount of hours; he sometimes could work from 10 a.m. to 6 p.m. repairing cars and other times he will work only for a couple of hours (Tr. 525). (Tr. 525-30.) In a psychodiagnostic evaluation with Ronald D. Duvall, Ph.D., on October 23, 2003, plaintiff told Dr. Duvall that he might work 10-15 days a month, between 10-20 hours a week, (Tr. 532). (Tr. 531-37.)

Plaintiff's claim was referred to CDIU on the basis of an anonymous complaint that plaintiff "may be working and earning more at his British auto repair and restoration business than he reports to SSA." (Tr. 539, 541.) The CDIU Report of Investigation (the Report), dated December 3, 2003, notes that a witness who has known plaintiff for over 25 years opined in an interview with investigator S. L. Baumgarte that plaintiff filed for disability to avoid paying over $40,000 in back child

8 - REPORT AND RECOMMENDATION

support.  The witness, who had knowledge that plaintiff had operated a similar business

in California, told Baumgarte that plaintiff had grossed $150,000 to $200,000 in the

business, and that plaintiff had avoided filing tax returns prior to 1986 and was skillful

at concealing income.  Investigator Baumgarte confirmed that plaintiff still owed over

$40,000 in child support.  (Tr. 539, 545.)  The Report also noted that plaintiff's seeking

treatment and applying for SSA benefits closely coincided with contesting court ordered

back child support.  (Tr. 539, 541.)

The Report states that investigator Baumgarte conducted surveillance at

plaintiff's auto repair shop on five occasions between September 11, 2003, and

November 3, 2003.  (Tr. 540, 544-45.)  On these occasions, the business was open

and, "on most occasions," plaintiff was observed working.  (Tr. 540.)

On November 6, 2003, Investigator Baumgarte and Special Agent (SA) Papoulias

traveled to plaintiff's business to conduct an unscheduled interview with him.  Plaintiff

was dressed in work clothing and gloves and was observed assisting in removing a

large metal shelf from a fork lift, and loading 4x8 sheet of plywood on the lift and

reaching forward to keep it from falling on the ground.  After introducing themselves,

the investigators asked plaintiff "how much he was working and informed him that if he

was intentionally concealing the amount of the work he did to Social Security that he

may face criminal prosecution."  (Tr. 540.)  He was also told that surveillance had been

conducted of him at his business on recent occasions.  The Report states:

> SA Papoulias stated, "It would seem like you typically put in six or seven
> hours a day, five days a week.  Is that right?"  Mr. Horrod said that was

accurate and that if he got a "big job" he might even be there more.
Investigator Baumgarte asked Mr. Horrod why he led Social Security to
believe that he only worked 14 hours a week. Mr. Horrod said that while
he may be in the shop longer he only counted "billable hours" as work
hours and did not think his other time in the shop should count. He
explained that often he would sit at his office desk and order parts but did
not consider that work as he did not bill for that time by the hour. He said
that the previous day he had been on the phone for three hours.

(Tr. 540-41, 545-46.) Plaintiff later "explained his distress over having to pay child

support payments and asserted that he had not done so because he did not have

visitation privileges. He insisted that the issue was primarily one of child support . . . ."

(Tr. 541, 547.)

In reviewing the Report, the ALJ noted that SSA had not asked plaintiff whether

billable hours should count but had only asked what hours were spent in the business.

The ALJ found that plaintiff had underestimated his hours for his own secondary gain.

The ALJ found that plaintiff's assertion that only billable hours are reportable "was

obvious concealment of work activity, patently ridiculous, and transparently self-

serving." (Tr. 68.) He found that there was no question that all business management

and income producing activities, including time on the telephone ordering and selling

parts, and being present at the business premises constitute work hours and work

activity. The ALJ also found that plaintiff's statements made during the investigation,

when he admitted that he typically put in six to seven hours a day, five days a week,

were more inherently reliable than plaintiff's later attempts at the hearing and

submission of "'hours worked from invoices'" to "backtrack and rewrite history." (Tr.

68.) The ALJ's findings in this regard are not unreasonable and are supported by

10 - REPORT AND RECOMMENDATION

substantial evidence.  Based on these hours, which plaintiff stated were accurate, the

ALJ found that, even at Oregon's minimum wage, at minimum, the value to plaintiff's

business exceeded the guidelines amount.  The ALJ then found that, considering

plaintiff's experience at his work which he found to be $15 per hour, the value to

plaintiff's business since February 2001 has been at least $2,100 per month.   The ALJ's

determination is based on correct legal standards and supported by substantial

evidence.


The record includes statements from seven individuals.  (Tr.  317-23.)  They

generally state that plaintiff was not at his business at the times they attempted to

make deliveries.  An ALJ must consider lay witness testimony concerning a claimant's

symptoms and ability to work and such testimony cannot be disregarded without

comment..  See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); Nguyen v. Chater,

100 F.3d 1462, 1467 (9th Cir. 1996).  "If the ALJ wishes to discount the testimony of the

lay witnesses, he must give reasons that are germane to each witness."  Dodrill, 12

F.3d at 919; see also Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001.)  The ALJ

considered each of the statements and found that the lay statements had no probative

value.  He noted that the persons primarily identified themselves as delivery drivers

who each state that plaintiff was often not present when they showed up at the

business.  The ALJ found that, even if true, this did not necessarily equate with a

finding that plaintiff was not performing SGA.  He further found that the statements

contradicted plaintiff's statements made to the CDIU investigators.  The ALJ also noted

that four of the statements appeared to be prepared by one person and contained no

contact telephone number.  The Court finds that, on this record, the ALJ gave germane

reasons for discounting the lay witness testimony.  See Lewis, 236 F.3d at 511 (an ALJ

may discount lay testimony which conflicts with medical evidence).

Plaintiff contends that Investigator Baumgarte's report and the ALJ's decision

were biased.  "'ALJs and other similar quasi-judicial administrative officers are presumed

to be unbiased.  This presumption can be rebutted by a showing of conflict of interest

or some other specific reason for disqualification.'"  Rollins v. Massanari, 261 F.3d 853,

857-58 (9th Cir. 2001) (quoting Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999)).

A claimant arguing bias must show that the ALJ's behavior, in the context of the whole

case, was "'so extreme as to display clear inability to render fair judgment.'"  Rollins,

261 F.3d at 858 (quoting Liteky v. United States, 510 U.S. 540, 555-56 (1994)).  The

basis of plaintiff's challenge for bias is that Investigator Baumgarte, and the ALJ,

believed the statements of his ex-wife.   It is clear on the record that Investigator

Baumgarte conducted his own investigation and did not rely on statements made by

plaintiff's ex-wife.  The evidence that plaintiff worked six or seven hours a day, five

days a week is from plaintiff's affirmation that this was "accurate," and his statement to

Investigator Baumgarte and SA Papoulias that, while he may be in the shop longer, he

only counted "billable hours" as work hours, admitting he had been on the phone for

three hours the previous day ordering parts–none of which he considered work hours. (Tr. 540-41, 545-46, <u>supra</u>.)  Plaintiff has offered no specific reason which would support bias or show that the ALJ was unable to render a fair judgment in this case.

## RECOMMENDATION

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be affirmed.

*This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals*.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order.  *Objections to this Report and Recommendation, if any, are due by January 22, 2008.  If objections are filed, any responses to the objections are due within 10 days, see* Federal Rules of Civil Procedure 72 and 6.  Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this __5__ day of January, 2009.

_____
MARK D. CLARKE
United States Magistrate Judge